

**SIGNED this 11 day of June, 2010.**

                                                             **Marcia Phillips Parsons**
                                                    **UNITED STATES BANKRUPTCY JUDGE**

_____

**[This opinion is not intended for publication as the precedential effect is deemed limited.]**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re<br>    TIMOTHY SCOTT BOWEN and<br>    KRISTY MICHELLE BOWEN,<br><br>                    Debtors. | No. 01-22901<br>Chapter 7 |
| TIMOTHY S. BOWEN and<br>KRISTY M. BOWEN,<br><br>    Plaintiffs,<br><br>vs.<br><br>MOUNTAIN COMMERCE BANK<br>successor of Erwin National Bank,<br><br>    Defendant. | <br><br><br><br><br>Adv. Pro. No. 09-5092 |

### M E M O R A N D U M

APPEARANCES:

| | |
|---|---|
| David N. Darnell, Esq.<br>Dean Greer & Associates<br>2809 East Center Street<br>Kingsport, Tennessee 37664<br>*Attorney for Timothy and Kristy Bowen* | Sarah R. Shults, Esq.<br>Shults & Shults<br>Post Office Box 129<br>Erwin, Tennessee 37650<br>*Attorney for Mountain Commerce Bank* |

Main Document    Page 2 of 9

**Marcia Phillips Parsons, United States Bankruptcy Judge**. In this adversary proceeding, Debtors Timothy and Kristy Bowen seek sanctions for Mountain Commerce Bank's alleged contempt of the discharge injunction provided by 11 U.S.C. § 524(a). The Bank has moved for dismissal for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the court concludes that the Debtors' amended complaint fails to state a facially plausible claim for violation of the discharge injunction, the motion to dismiss will be granted. This is a core proceeding. *See* 28 U.S.C. § 157(a)(2)(A) and (O).

I.

On August 22, 2001, the Debtors filed a voluntary petition for bankruptcy relief under chapter 13. Their plan of reorganization was confirmed and after successful completion of that plan, the court entered a discharge order pursuant to 11 U.S.C. § 1328(a) on January 6, 2006. Thereafter, on July 6, 2006, the clerk of the court closed the case.

More than three years later on September 22, 2009, the Debtors, represented by new counsel, filed a motion to reopen their bankruptcy case for the purpose of commencing an adversary proceeding against the Bank for violation of the discharge injunction. By order entered November 10, 2009, the motion was granted.

On December 8, 2009, the Debtors commenced the instant adversary proceeding. The Bank answered the complaint and then filed a motion for judgment on the pleadings, primarily contending that the discharge injunction provision of the Bankruptcy Code, § 524(a), does not create a private right of action for a creditor's violation of that statute and, therefore, the action must be dismissed. At a hearing on the motion, Debtors' counsel conceded that the Debtors had no private right of action under § 524(a), but argued that the Bank's alleged conduct was sanctionable as contempt of the discharge order and injunction. The Debtors were subsequently granted permission to amend their complaint, which they did on March 25, 2010. The amended complaint was met by the Bank's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b), for failure to state a claim upon which relief can be granted. It is this motion that is presently before the court.

In their complaint as amended, the Debtors allege that in their bankruptcy case they paid unsecured creditors a 100% dividend and paid in full the secured claims of Erwin National Bank, predecessor of Mountain Commerce Bank, in accordance with the terms of their confirmed plan. The Debtors further allege that after entry of the January 6, 2006 discharge order,

> the Bank continued to report and allow a negative reference to its claim(s) to remain on the Debtor's credit reports. The misinformation was reported through 2009. . . . The Debtors went to the Bank on several occasions to get the negative reference removed. The Bank failed and/or refused to remove the negative reference.

The amended complaint recites that "[t]he information left in the credit report caused the debtors to fail to be approved for several vehicle loans," that "[t]he negative reference caused their home mortgage to be at least .75 basis points higher than it would have been had the reference not been left there," that the Debtors paid a company "$400 to assist them in getting this reference removed" but the company's efforts were unsuccessful, and that "[t]he Debtors have suffered out of pocket expenses and losses due to the misinformation presented by the Bank in their credit reports." Based on the foregoing, the Debtors seek an order finding the Bank in willful contempt of the discharge order entered January 6, 2006, and in violation of the discharge injunction provided by § 524(a). The Debtors request that the Bank be enjoined from reporting any further negative activity on the account and that they be awarded compensatory damages, including those for mental distress and anxiety, attorney fees and costs, and punitive damages.

In its motion to dismiss, the Bank again argues that the amended complaint should be dismissed because it attempts to create a private right of action for violation of § 524(a) of the Bankruptcy Code even though no such private right of action exists. The Bank also argues that the Debtors fail to allege sufficient facts to state a claim for relief. The Bank observes that no copy of the allegedly offensive report is attached to the amended complaint, that there is no allegation that the offensive information is currently on the report, and that the amended complaint fails to identify the "negative reference" or otherwise explain why the "information left in the credit report" was factually inaccurate or legally inappropriate. The Bank also points out that there is no allegation that it acted intentionally or in an attempt to coerce payment of a debt.

The Debtors oppose the Bank's motion to dismiss, asserting that the amended complaint provides sufficient allegations to support their contempt action. The Debtors also argue that it is

3

irrelevant that the credit report no longer includes the offensive language, since they are entitled to damages suffered "as a result of the continuous inaction by the [Bank]." Lastly, the Debtors rely on the legal argument set forth in their earlier response to the Bank's motion for judgment on the pleadings, wherein they assert that their complaint "may be dismissed only if it appears beyond doubt that the plaintiff would not be entitled to any type of relief," citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957). The Debtors contend that because their complaint is sufficient to meet this standard, the Bank's motion to dismiss must be denied.

II.

Federal Rule of Civil Procedure 12(b)(6) provides that, upon motion, a complaint may be dismissed for failure to state a claim upon which relief can be granted. The Sixth Circuit has stated:

> The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions or legal conclusions. *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir.1993) (*citing Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988)). All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the nonmoving party. *Great Lakes Steel v. Deggendorf,* 716 F.2d 1101, 1105 (6th Cir.1983); 2 Moore's Federal Practice § 12.34[1][b] (Matthew Bender 3d ed. 2003). The court need not, however, accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). To survive a motion to dismiss, the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). The Supreme Court has further articulated that:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). In espousing the plausibility standard, the Court abrogated "no-set-of-facts" minimal standard often cited from *Conley v. Gibson* that previously governed Rule 12(b)(6) motions. *Fritz v. Charter Twp.*

4

*Of Comstock*, 592 F.3d 718, 725 (6th Cir. 2010); *see also Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) ("The Supreme Court recently raised the bar for pleading requirements beyond the old 'no-set-of-facts' standard of *Conley v. Gibson* . . . .").

### III.

As previously noted, the Debtors received a discharge pursuant to 11 U.S.C. § 1328(a), which as a general rule provides for a discharge of all debts provided for by the plan after completion of all payments under the plan. 8 *Collier on Bankruptcy* ¶1328.02[3][a] (16th ed. 2010). This discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). It is well settled in the Sixth Circuit that there is no statutory private right of action for a violation of the discharge injunction. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421-23 (6th Cir. 2000). Nonetheless, violation of the discharge injunction exposes a creditor to potential contempt of court. *Id.* at 421 ("[T]he traditional remedy for violation of an injunction lies in contempt proceedings."). "A creditor who undertakes to collect a discharged debt from a debtor violates the discharge injunction and is in contempt of the court that issued the discharge order." *Lohmeyer v. Alvin's Jewelers (In re Lohmeyer)*, 365 B.R. 746, 749 (Bankr. N.D. Ohio 2007). "If the contempt is established, the injured party may be able to recover damages as a sanction for the contempt." *Id.* at 749-50.[1]

In the present case, as pointed out by the Bank, there is no allegation in the amended complaint that the Bank acted or failed to act in an attempt to collect a discharged debt. This

---

[1] Although the traditional method of pursuing contempt is by a motion instituting a contested matter, it is also acceptable to do so by filing a complaint commencing an adversary proceeding. *See Montano v. First Light Fed. Credit Union (In re Montano)*, 398 B.R. 47, 56 (D. N.M. 2008) (citing, *inter alia*, *Wagner v. Piper Industries, Inc. (In re Wagner)*, 87 B.R. 612, 619 (Bankr. C.D. Cal. 1988) ("An adversary proceeding provides the parties with more, not less, procedural protections than what are available in a contested matter by way of motion."). *But see Barrientos v. Wells Fargo Bank N.A.*, No. 08cv463, 2009 WL 1438152, *5 (S.D. Cal. May 20, 2009) (and cases cited therein) (holding that it is improper to seek relief for violation of the discharge injunction by adversary proceeding).

absence is critical since such an act is the *sine qua non* of a discharge violation. *See Mahoney v. Washington Mutual, Inc. (In re Mahoney)*, 368 B.R. 579, (Bankr. W.D. Tex. 2007) ("[F]or any act to count as an act that violates the discharge, there must be evidence of an effective connection between the conduct of the creditor and the collection of the debt."). While it could be argued that an attempt to collect a discharged debt can be inferred from the Bank's alleged conduct, *see Torres v. Chase Bank USA, N.A. (In re Torres)*, 367 B.R. 478, 487 (Bankr. S.D.N.Y. 2007), there is no indication in the amended complaint that a debt owed to the Bank was discharged in the Debtors' bankruptcy case, or that there is any debt left owing for the Bank to collect, irrespective of the discharge of the Debtors' personal liability. To the contrary, the Debtors assert in their amended complaint that "[t]he Plan paid unsecured creditors a 100% dividend on their prepetition claims and paid the secured claims of [the Bank] in full." Absent an unpaid debt to collect, this court is unable to make the inference that the conduct of which the Debtors complain was an attempt by the Bank to collect a discharged debt.

The omission of any allegation in the complaint that the Bank acted in an attempt to collect a discharged debt is also problematic in this particular case because it appears from the amended complaint that the initial reporting by the Bank took place prior to the entry of the discharge. It has been held that the mere failure to remove credit information posted prepetition about a debtor does not constitute an "act"in violation of the discharge injunction. *See In re Mahoney*, 368 B.R. at 584 ("[T]he mere reporting of credit information about a debtor *vel non* is not an "act" to collect a discharged debt within the meaning of the statute, unless the evidence shows that there is a linkage between the act of reporting and the collection or recovery of the discharged debt."); *Irby v. Fashion Bug (In re Irby)*, 337 B.R. 293, 296 (Bankr. N.D. Ohio 2005) (no cause of action for violation of the discharge injunction based on mere failure to remove debt from credit report); *Helmes v. Wachovia Bankr. N.A. (In re Helmes),* 336 B.R. 105, 109 (Bankr. E.D. Va. 2005) (bank's inadvertent failure to remove derogatory report previously sent to credit reporting agency did not constitute violation of discharge injunction since there was no showing that allowing the report to remain was an act intended to collect a debt); *Vogt v. Dynamic Recovery Servs. (In re Vogt)*, 257 B.R. 65, 72 (Bankr. D. Colo. 2000) ("False reporting, if not done to extract payment of the debt, is simply not an act proscribed by the Code.")

On the other hand, it has been appropriately recognized that where the failure to update the status of a debt is for the purpose of coercing payment by a debtor, essentially lying in passive wait to collect the debt, then a violation of the discharge injunction has occurred, even without other overt collection actions such as letters or harassing telephone calls. *See In re Lohmeyer*, 365 B.R. at 750. Thus, the creditor's motive in failing to remove a report previously made is material in evaluating whether a violation of the discharge injunction has occurred.[2] *Id*. A coercive motive may be inferred if the creditor refuses to correct the information as to the status of a debt on a credit report after a request has been made by the debtor. *See, e.g., Winslow v. Salem Five Mortgage Co. (In re Winslow),* 391 B.R. 212, 216 (Bankr. D. Me. 2008) (creditor's repeated refusal to change reporting of debt as "an open account 30 days late" for former codebtor on joint mortgage loan for which her individual obligation had been discharged was coercive); *Russell v. Chase Bank USA, N.A. (In re Russell),* 378 B.R. 735, 742-43 (Bankr. E.D. N.Y. 2007) (allegation that creditor deliberately refused to change reporting of debts as "past due or owing, charged off or charged off as bad debt" in order to pressure the debtor to pay discharged debt was sufficient to withstand motion to dismiss); *In re Torres*, 367 B.R. at 489 (inferring coercive intent sufficient to withstand motion to dismiss where creditor failed to update credit report postpetition despite being requested to do so by the debtor).

In the present case, not only is there no allegation of motive or intent, there is also no clear allegation that the Bank refused to correct the credit report after a request by the Debtors. The exact wording in the amended complaint is that "[t]he Debtors went to the Bank on several occasions to get the negative reference removed. The Bank failed and/or refused to remove the negative reference." Because of the use of the alternative "and/or" and the absence of any details explaining these allegations, it is unclear if the Bank deliberately refused to remove the "negative reference" on the Debtors' credit report or simply failed to do so. In light of this ambiguity, this court is again unable to infer that the Bank's failed to act with the intent to collect a discharged debt from the Debtors.

---

[2] In this regard, it is important to recognize that what is relevant is not the intent to violate the discharge, but rather the intent to commit the act that violates the discharge injunction. *In re Mahoney*, 368 B.R. at 587.

7

Finally, and more fundamentally, the amended complaint fails to state a claim for relief because it fails to provide the specificity required by Federal Rule of Civil Procedure 8 and to otherwise satisfy the plausibility standard of Rule 12(b)(6), as now articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 544, and *Ashcroft v. Iqbal*, 129 S. Ct. at 1937. According to the Court, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (internal citations omitted).

In this regard, the amended complaint fails to identify in any respect what the Debtors claim the Bank reported on the Debtors' credit report. No copy of the offensive report is attached or otherwise described; the amended complaint simply refers to "a negative reference," the "misinformation," and "the information left in the credit report." These conclusory labels, "devoid of further factual enhancement," are insufficient under Rule 8. Absent the requisite factual detail as to what was reported, this court is unable to determine whether it is plausible that the Bank refused to remove certain information from the Debtors' credit report in an effort to collect a discharged debt and the presence of this information caused the Debtors to suffer the damage claimed. *Id*. at 1950 ("Determining whether a complaint states a plausible claim for relief . . . will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

The Supreme Court has instructed that when faced with a motion to dismiss, a court should begin by identifying those allegations that are not entitled to the assumption of truth because they are no more than conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. at 1950. A court is then to examine what is left, the "well-pleaded factual allegations," and determine whether they give rise to an entitlement for relief. *Id*. Applying this standard to the present case, the amended complaint, stripped of its unsupported conclusions, recites that the Bank, which had been paid in full in the Debtors' chapter 13 case, thereafter continued to report certain information in the Debtors' credit report, that the Bank refused or merely failed to remove the information, that a company paid by the Debtors attempted to have the information removed but was unsuccessful, and that the Debtors' credit suffered. While these allegations arguably raise the possibility that the Bank acted or failed

8

to act in an attempt to collect a discharged debt in violation of the discharge injunction, thus stating a claim for contempt, they are also consistent with simple inadvertence by the Bank in failing to remove the information and with the Debtors' credit being harmed by the fact that they had filed bankruptcy previously, non-actionable explanations.  And, even if the amended complaint sufficiently alleges that the Bank refused to remove certain information from the Debtors' credit report and the presence of this information led to the damages suffered by the Debtors, such allegations merely raise the possibility of a contempt violation absent the assertion or the reasonable inference that the refusal was to collect a discharged debt.  Because the amended complaint only raises the possibility that the Bank acted unlawfully, or at most pleads facts that are merely consistent with the Bank's liability, it stops short of the line between possibility and plausibility of entitlement to relief.  *Id*. at 1949.

## IV.

In conclusion, the amended complaint fails to allege sufficient facts to state a claim for relief that is plausible on its face.  The information that the Bank is alleged to have reported is not identified in the amended complaint.  There is no allegation that the Bank acted or failed to act in an attempt to collect a discharged debt.  It is unclear whether any debt owed to the Bank was discharged such that the Bank's conduct can be inferred to be an attempt to collect a discharged debt.  The allegations of the amended complaint are ambiguous regarding whether the Bank deliberately refused to remove the information.  Taken as a whole, the amended complaint fails to set forth sufficient factual content that allows the court to draw the reasonable inference that the Bank is in contempt of the discharge injunction.  Accordingly, an order will be entered in accordance with the foregoing, granting the Bank's motion to dismiss.

# # #